S. LANE TUCKER
United States Attorney

MICHAEL J. HEYMAN
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: michael.heyman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>CHERYL LEE LABRIE,<br><br>    Defendant. | No.   3:24-cr-00009-JMK-MMS<br><br>COUNT 1-4<br>WIRE FRAUD<br> Vio. of 18 U.S.C. § 1343<br><br>COUNT 5-6<br>BANK FRAUD<br> Vio. of 18 U.S.C. § 1344<br><br>COUNT 7-12<br>MONEY LAUNDERING<br> Vio. of 18 U.S.C. § 1957<br><br>CRIMINAL FORFEITURE ALLEGATION 1<br> 18 U.S.C. § 981(a)(1)(C)<br><br>CRIMINAL FORFEITURE ALLEGATION 2<br> 18 U.S.C. § 981(a)(1)(A) |

**INDICTMENT**

The Grand Jury charges that:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Defendant Cheryl Lee Labrie ("Defendant") was a resident of Anchorage, Alaska.

2. Defendant was the manager and sole member of AKBS, LLC ("AKBS"), doing business as Liberty Tax Services and Alaska's Bookkeeping Services, an Alaska entity organized to provide bookkeeping, payroll and bill pay services.

3. Defendant was the 50% member of M & C Enterprises, LLC ("M&C"), an Alaska entity organized to provide payroll services.

4. In 2013, Defendant was convicted of 1st Degree Theft, a felony, in the Superior Court for the State of Alaska, Third Judicial District, case number 3AN-13-01139CR. The sentence was suspended, and Defendant was placed on five years' probation and ordered to pay $70,000 restitution. In January 2019, despite the five years expiring, the court extended the probationary term because Defendant had not repaid the restitution.

COVID Disaster-Relief Loans

5. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act became law. The CARES Act created the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDLs").

6. The PPP authorized the Small Business Administration ("SBA") to guarantee loans of up to $10,000,000 to qualifying employers without collateral or personal guarantees from the borrowers. The Act required lenders making loans under

the PPP to defer all repayment obligations for not less than six months on such loans and required borrowers to certify, among other things, that the borrowed "funds [would] be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments." Pursuant to the CARES Act, the amount of PPP funds a business is eligible to receive is determined by the number of employees employed by the business and their average payroll costs. The PPP allows qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans. PPP loan proceeds must be used by businesses on payroll costs, mortgage interest, rent, and/or utilities, among other specified expenses. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses under certain conditions. Businesses applying for a PPP loan must provide documentation to confirm that they have in the past paid employees the compensation represented in the loan application. The PPP is overseen by the SBA, which has authority over all PPP loans, but individual PPP loans are issued by approved commercial lenders who receive and process PPP applications and supporting documentation. The first round of PPP closed to new applications on August 8, 2020.

7. The EIDL program is an SBA program providing low-interest financing to small businesses, renters, and homeowners affected by declared disasters. The CARES Act and Coronavirus Response and Relief Supplemental Appropriations Act of 2021 authorized the SBA to issue EIDLs (and additional EIDL advances of up to $10,000) to small businesses within three days of applying for an EIDL. EIDLs must be repaid and are determined based upon the number of certified employes by the applicant. EIDL advances do not have to be repaid. To obtain an EIDL and/or an EIDL advance,

qualifying businesses must submit an application to the SBA and provide information about business operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster; in the case of EIDLs for COVID-19 relief, the 12-month period preceding January 31, 2020. The applicant must also certify all application information submitted is true and correct to the best of the applicant's knowledge.

8. On December 27, 2020, the Consolidated Appropriations Act of 2021, which included the Economic Aid to Hard-Hit Small Businesses, Nonprofit, and Venues Act (the "Relief Act") was signed into law, providing additional funding for the PPP. Under the Relief Act, certain businesses that already obtained a PPP loan under the original PPP were eligible for an additional "second draw" PPP loan, provided they met certain requirements. The Relief Act also re-opened the application period for "first draw" PPP loans to businesses that had not been approved for a "first draw" loan prior to August 8, 2020, or who may have been eligible to receive more funds during the "first draw" period than they actually received. Borrowers through the PPP second draw program are also eligible to apply for loan forgiveness once all loan proceeds for which forgiveness is requested have been used.

9. In order to obtain a PPP loan, an applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues. The applicant was also required to certify all the information in the application was true and correct to the best of the applicant's knowledge. PPP loan applications were submitted over the Internet by participating

lenders via the SBA's computer servers. Regardless of originating location, all PPP applications submitted through August 8, 2020, were received by servers located in Virginia. PPPs applications submitted after January 11, 2021, were received through servers located in Oregon, and subsequently transmitted to servers in Virginia.

10. PPP Forgiveness Loan Applications were submitted over the Internet via SBA's computer servers. Regardless of originating location, all PPP Forgiveness Applications were received through servers located in Oregon, and subsequently transmitted to servers in Virginia.

11. EIDL applications were submitted over the internet via SBA's computer servers and transited via interstate wires depending upon their date of application. Prior to July 11, 2020, applications originating in any state beginning with prefix 36 transited via wires to Washington, before being routed to Colorado, and subsequently Virginia.

The General Scheme

12. From no later than April 2020, and continuing through August 2022, Defendant Cheryl Lee Labrie knowingly and willfully executed a scheme and artifice to defraud the SBA and financial institutions, including Alaska USA Federal Credit Union ("Alaska USA"), a participating PPP lender, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

13. Specifically, Defendant applied for and obtained an EIDL advance, two EIDL loans, two PPP loans, and the forgiveness of two PPP loans (first and second draw) for AKBS by means of materially false and fraudulent pretenses, representations, and

promises, and, in some instances, intended to convert the proceeds of those loans for unauthorized purposes, including for personal use.

## Manner and Means

14. As part of the scheme and artifice to defraud, Defendant committed or participated in the following acts:

<u>The First EIDL</u>

15. On April 1, 2020, Defendant submitted an EIDL application to the SBA on behalf of AKBS seeking $110,500.00, plus a $6,000 advance.

16. The EIDL application contained the following false statement: In response to the question of whether Defendant had ever been convicted, pled guilty, or been placed on any form of probation, Defendant responded, "No." In truth, Defendant had been convicted in 2013 for 1st Degree Theft, a felony, and placed on probation. At the time of the EIDL application, Defendant remained on probation and was aware of her conviction and current probationary status, but knowingly and willfully provided false information about the conviction and probation.

17. Based at least in part on the material false Statements, the SBA approved the EIDL advance and dispersed it to AKBS's Alaska Federal Credit Union business account on April 23, 2020, and the EIDL was subsequently approved and funded on June 3, 2020.

The Second EIDL

18. In April 2021, Defendant requested a $349,500 increase of the EIDL (for a total of $460,000.00) on behalf of AKBS. Defendant falsely represented to the SBA that all statements in the initial application were true and that the funds would be used "solely as working capital to alleviate economic injury" caused by COVID.

19. Based at least in part on the material false Statements, the SBA approved the second EIDL and funded it to AKBS's Northrim Bank business account on July 12, 2021.

20. However, the representation about her criminal history in the original loan application was not true and Defendant obtained the second draw not for working capital as a result of economic injury caused by COVID, but primarily for personal expenses, including, without limitation, to facilitate the purchase of a new home (including obtaining a downpayment, satisfying an outstanding federal tax lien of M&C, and satisfying an outstanding student debt lien), and to pay the outstanding restitution order from her 2013 conviction.

21. On the date she received the EIDL funds, Defendant, among other things, immediately satisfied the M&C tax lien, a condition required by her mortgage lender to qualify for the home loan. Defendant paid the M&C tax lien in three payments, $11,401.92, $20,831.48, and $65,005.04.

22. The next day, July 15, 2021, Defendant opened a new personal account at Northrim Bank and transferred $80,000 in EIDL proceeds from the AKBS business account to her new personal account.

23. Shortly thereafter, Defendant opened two new AKBS accounts at Northern Skies Bank. Defendant then obtained two cashier's checks from Northrim Bank in the amounts of $150,000 and $76,012.36 and deposited them into the new Northern Skies accounts on July 20, 2021, and August 2, 2021, respectively. Defendant did not use those proceeds deposited into the new Northerns Skies accounts as working capital to alleviate economic injury caused by COVID, but for, at least in part, unrelated purposes, including, without limitation, for payroll expenses of a marijuana dispensary.

The First Draw PPP Loan

24. On April 29, 2020, Defendant submitted a PPP loan application (loan number 53187473-01) to Alaska USA on behalf of AKBS seeking a PPP loan in the amount of $200,000.

25. The PPP loan application contained material false statements. Defendant represented that AKBS's average monthly payroll was $80,000 and further submitted an IRS Form W3 claiming that AKBS's 2019 employee payroll was $1,631,335. According to filings certified by Defendant to the Alaska Department of Labor ("DOL"), Alaska Department of Revenue ("DOR"), and Internal Revenue Service ("IRS"), AKBS's total payroll for the entirety of 2019 was approximately $67,000.

26. Defendant further represented that the total number of AKBS employees was 32 and submitted a 2019 IRS Form W3 claiming that AKBS had 86 employees. According to filings certified by Defendant to the DOL, DOR, and IRS, AKBS had, at most, 18 employees.

27. Defendant also certified that she was not engaged in any activity that is illegal under federal, state or local law, and further certified the information provided in the first draw PPP loan application and the information provided in all supporting documents and forms is true and accurate in all material respects.

28. Based at least in part on these material false statements, Alaska USA approved the loan and dispersed the funds on May 14, 2020. In addition, following Alaska USA funding of the PPP loan, on June 22, 2020, the SBA paid Alaska FCU $10,000 in lender fees to finance the PPP loan.

The Second Draw PPP Loan

29. On January 27, 2021, Defendant submitted a PPP loan application (loan number 8334898300) to Alaska USA on behalf of AKBS seeking a second draw PPP loan in the amount of $292,573.00.

30. The second draw PPP application contained material false statements. Defendant represented that AKBS's average monthly payroll was $118,416 and further submitted four IRS Form 941s for 2020 claiming that AKBS's quarterly employee payroll was $341,383, $337,506.14, $346,764, and $425,613, respectively. Defendant further submitted a certified 2019 profit and loss statement representing that yearly payroll was $570,446 ($47,537 average monthly), and a statement representing that payroll for the first quarter of 2020 was $424,677. According to filings certified by Defendant to the DOL, AKBS's total payroll for the entirety of 2020 was approximately $85,579.

31. Defendant further represented that the total number of AKBS employees was 75 and submitted four quarterly IRS Form W3s for 2020 representing that AKBS had 37, 32, 34, and 41 employees per quarter, respectively. According to filings certified by Defendant to the DOL, AKBS had, at most, 11 employees in 2020.

32. Defendant also certified she was not engaged in any activity that is illegal under federal, state or local law, and further certified the information provided in the second draw PPP Loan application and the information provided in all supporting documents and forms is true and accurate in all material respects.

33. Based at least in part on these material false statements, Alaska USA approved the second draw loan and dispersed the funds on February 3, 2021. In addition, following Alaska USA funding of the second draw PPP loan, on March 15, 2021, the SBA paid Alaska USA $14,628.65 in lender fees to finance the PPP loan increase.

Forgiveness of the First PPP Loan

34. On February 23, 2021, Defendant submitted a PPP Loan Forgiveness Application for the first PPP loan (covered period of 5/14/2020 to 10/22/2020). The application contained material false statements. Defendant represented that that payroll expenses for the applicable five-month period were $658,473.72 when, according to filings certified by Defendant to the DOL, payroll expenses for the entire 2019 were $67,270 and payroll expenses for the entire 2020 were approximately $80,000.

35. Defendant further represented that the total number of AKBS employees was 71, but according to filings certified by Defendant to the DOL, DOR, and IRS, AKBS had, at most, 19 employees.

36. The SBA approved the first PPP Loan Forgiveness Application on March 10, 2021, and paid Alaska USA a total of $201,643.84 in principal and interest payments. But for the false statements, the SBA would not have approved the loan forgiveness.

Forgiveness of the Second PPP Loan

37. On July 8, 2021, Defendant submitted a PPP Loan Forgiveness Application for the second draw PPP loan (covered period of 2/3/2021 to 6/30/2021). The application contained material false statements. Defendant represented that payroll expenses for the applicable period were $752,550.45 when, according to filings certified by Defendant to the DOL, payroll expenses for the entire 2020 were approximately $80,000 and payroll expenses for the first and second quarter of 2021 were $138,549.

38. Defendant further represented that the total number of AKBS employees was 54, but, according to filings certified by Defendant to DOL, AKBS had five employees.

39. The SBA approved the second PPP Loan Forgiveness Application on July 20, 2021, and paid Alaska USA a total of $293,911.62 in principal and interest payments. But for the false statements, the SBA would not have approved the loan forgiveness.

## COUNTS 1-4
### (Wire Fraud - 18 U.S.C. § 1343)

40. The allegations contained in paragraphs 1 to 39 are hereby incorporated by reference.

41. On or about the dates set forth in the separate counts below, within the District of Alaska, Defendant did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud as to a material matter and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and, for the purpose of executing such scheme and artifice and attempting to do so, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs and signals, namely:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 1 | April 1, 2020 | EIDL Application from servers in the State of Alaska to SBA servers in the State of Washington |
| 2 | April 24, 2021 | EIDL Increase Application from servers in the State of Alaska to SBA servers in the State of Washington |
| 3 | February 23, 2021 | PPP Loan (1st Draw) Forgiveness Application from servers in the State of Alaska to SBA servers in the State of Oregon |
| 4 | July 8, 2021 | PPP Loan (2nd Draw) Forgiveness Application from servers in the State of Alaska to SBA servers in the State of Oregon |

All in violation of Title 18, United States Code, Section 1343.

## COUNT 5
(Bank Fraud - 18 U.S.C. § 1344)

42. The allegations contained in paragraphs 1 to 39 are hereby incorporated by reference.

43. On or about April 29, 2020, within the District of Alaska, Defendant did knowingly execute said scheme or artifice to defraud Alaska USA, a federally insured financial institution, of something of value, and obtain money or property from Alaska USA by means of materially fraudulent pretenses and representations, in that Defendant applied for and obtained a PPP loan of $200,000 from Alaska USA while knowingly and willfully misrepresenting AKBS's average monthly payroll and number of employees.

All in violation of Title 18, United States Code, Section 1344.

## COUNT 6
(Bank Fraud - 18 U.S.C. § 1344)

44. The allegations contained in paragraphs 1 to 39 are hereby incorporated by reference.

45. On or about January 27, 2021, within the District of Alaska, Defendant did knowingly execute said scheme or artifice to defraud Alaska USA, a federally insured financial institution, of something of value, and obtain money or property from Alaska USA by means of materially fraudulent pretenses and representations, in that Defendant applied for and obtained a PPP loan of $292,573.00 from Alaska USA while knowingly and willfully misrepresenting AKBS's average monthly payroll and number of employees.

All in violation of Title 18, United States Code, Section 1344.

## COUNTS 7-12
(Money Laundering – 18 U.S.C. § 1957)

46. The allegations contained in paragraphs 1 to 39 are hereby incorporated by reference.

47. On or about the dates set forth in the chart below for Counts 7-12, in the District of Alaska, Defendant did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit: the withdrawal, deposit, and transfer of EIDL proceeds from and to the financial institutions identified below, such property, having been derived from specified unlawful activity, that is, wire fraud and bank fraud:

| COUNT | DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 7 | July 14, 2021 | Defendant transferred the amount of $11,401.92 from AKBS's Northrim Bank account -3595 to the IRS to satisfy M&C's federal tax lien |
| 8 | July 14, 2021 | Defendant transferred the amount of $20,831.48 from AKBS's Northrim Bank account -3595 to the IRS to satisfy M&C's federal tax lien |
| 9 | July 14, 2021 | Defendant transferred the amount of $65,005.04 from AKBS's Northrim Bank account -3595 to the IRS to satisfy M&C's federal tax lien |
| 10 | July 15, 2021 | Defendant transferred the amount of $80,000 from AKBS's Northrim Bank account -3595 to Northrim Bank account -7636 |
| 11 | July 20, 2021 | Defendant obtained a cashier's check from AKBS's Northrim Bank account -3595 in the amount of $150,000 and deposited it into AKBS's new Northern Skies account -588 |
| 12 | August 2, 2021 | Defendant obtained a cashier's check from AKBS's Northrim Bank account -3595 in the amount of $76,012.36 and deposited it into AKBS's new Northern Skies account -588 |

All in violation of Title 18, United States Code, Section 1957.

## CRIMINAL FORFEITURE ALLEGATION 1

48. Upon conviction of the wire fraud and bank fraud offenses alleged in Counts 1 through 6 of this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any and all property, real or personal, involved in or derived from said offense and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

## CRIMINAL FORFEITURE ALLEGATION 2

49. Upon conviction of the money laundering offenses alleged in Counts 7 through 12 of this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 28 U.S.C. § 2461(c) any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property

50. If the above-described forfeitable property identified in Criminal Forfeiture Allegations 1 or 2, as a result of any act or omission of defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c)

A TRUE BILL

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Michael J. Heyman
MICHAEL J. HEYMAN
Assistant U.S. Attorney
United States of America

s/ S. Lane Tucker
S. LANE TUCKER
United States Attorney

DATE: 1/16/2024